IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| CIERRA N GRANT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:15-CV-201 (LJA) |
| | : | |
| HOSPITAL AUTHORITY OF | : | |
| MILLER COUNTY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (the "Motion"), Doc. 11. Defendant also moved for a hearing on its Motion. Doc. 18. For the reasons stated below, the Motion is **GRANTED in part and DENIED in part**. Defendant's motion for a hearing is **DENIED**.

## BACKGROUND

Plaintiff, Cierra N. Grant, initiated this action against her employer, Defendant Hospital Authority of Miller County, on December 28, 2015, asserting five causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*; (2) race discrimination in violation of 28 U.S.C. § 1981 and Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e, *et seq.*; (3) sex[1] discrimination in violation of Title VII; (4) pregnancy discrimination in violation of Title VII as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k); and (5) retaliation and interference in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* Doc. 1. Plaintiff alleges that Defendant discriminated against Plaintiff by terminating her

---

[1] "Title VII bar[s] not just discrimination because of biological sex, but also gender stereotyping." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011). Although Plaintiff appears to use the terms sex and gender interchangeably, her claims sound in sex discrimination and do not raise issues of gender conformity. Thus, this Court will refer to Plaintiff's claim as a claim for discrimination on the basis of sex.

employment after she was unable to return to work due to complications from a pregnancy and failed to accommodate Plaintiff with unpaid leave. *Id.* at 2.

On January 16, 2017, Defendant filed the Motion, moving for summary judgment on all of Plaintiff's claims. Doc. 11. Plaintiff filed her opposition to the Motion on February 6, 2017. Doc. 20. Defendant filed its reply on February 16, 2017. Doc. 21.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cty.*, 552 F. App'x 902, 904 (11th Cir. 2014).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Allen*, 121 F.3d at 646.

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some

element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24; *Barreto*, 331 F. App'x at 673. Local Rule 56 further requires that "documents and other record materials relied upon by [the moving party] be clearly identified for the court." M.D. Ga. L.R. 56. "Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court." *Id.*

"When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 556-57 (11th Cir. 2014) (internal citations omitted). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see also Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

As the nonmovant facing a motion for summary judgment, Plaintiff was required to identify those material facts as to which she "contends there exists a genuine dispute to be tried." The Local Rules require those responses to controvert statements of material facts in motions for summary judgment with "specific citation to particular parts of materials in the record." *See* M.D. Ga. L.R. 56. Here, Plaintiff's Response to Defendant's Statement of Material Facts fails to comply with the Local Rules. Plaintiff repeatedly responds to Defendant's statements with: "Without knowledge, and therefore, denied." *E.g.*, Doc. 20-1 ¶¶ 7, 8, 51. Defendant also fails to deny allegations by Plaintiff or cites to parts of the record that do not support a denial. *E.g.*, Doc. 22 ¶¶ 61, 63. Accordingly, as to all statements asserted by Defendant in its Motion or Plaintiff in its opposition that are supported by specific record citation, the Court deems them to be admitted where the responding party has failed to properly respond in accordance with the Local Rules.

## FACTUAL BACKGROUND[2]

Defendant operates a critical access, not-for-profit medical facility located in Colquitt, Georgia with approximately four hundred and sixty employees. Doc. 11-3 ¶ 1. Plaintiff, a black female, was hired by Defendant as a Ward Clerk on December 7, 2011. Doc. 22 ¶ 52. On April 1, 2013, Plaintiff was promoted to the position of Pharmacy Technician. Doc. 22 ¶ 53. During her employment with Defendant, Plaintiff received no negative performance reviews and no disciplinary actions against her. Doc. 22 ¶ 54. As a Pharmacy Technician, Plaintiff's primary duties were to "fill prescriptions, employee prescriptions, the nursing home prescriptions, IV's, antibiotics, fill the Pyxis, and fill insurance." Doc. 11-3 ¶ 11.

On December 6, 2011, Plaintiff received a copy of Defendant's employee handbook which includes a statement regarding the leave available to Plaintiff under FMLA, noting that FMLA leave will be exhausted concurrent with paid leave.[3] Docs. 11-3 ¶¶ 6, 7; 20-1 ¶ 7. The handbook also requires employees to submit a "work/fitness for duty certificate" when returning from FMLA leave. Doc. 11-2 at 53. Further, Defendant prominently posts posters in common areas in each of Defendant's facilities regarding its employee's entitlement to take FMLA leave. Docs. 11-3 ¶ 8; 20-1 ¶ 8.

On September 15, 2014, Plaintiff experienced pregnancy complications in that her blood pressure was high and her doctor could not control it. Doc. 22 ¶ 55. Plaintiff's doctor ordered her on bedrest for one week. Doc. 22 ¶ 55. On September 16, 2014, Plaintiff hand-delivered the doctor's written order to Defendant's Human Resources Director Karie Spence. Doc. 22 ¶ 55. During the meeting with Spence, Plaintiff inquired about her leave options and sought information about FMLA leave. Docs. 20-1 ¶¶ 12, 56. The same day, Plaintiff filed and was approved for FMLA leave due to complications with her pregnancy. Doc. 11-3 ¶ 12.

---

[2] The relevant facts are derived from the parties' statements of material facts and responses thereto, and the record in this case. Docs. 11, 20, 21, 22. Where relevant, this factual summary also contains undisputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the non-moving party. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323.

[3] It is lawful for an employer to require FMLA leave to be calculated thus. *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999) ("[D]efendant exercised its statutory right to require plaintiff to substitute her accrued paid leave for her 12 week FMLA leave.").

On December 5, 2014, Plaintiff gave birth, via emergency caesarean section, to her daughter who was only at 28 weeks gestation. Doc. 22 ¶ 60. Plaintiff and Spence spoke via telephone on December 8, 2014. Docs. 11-3 ¶ 15; 22 ¶ 61. Plaintiff told Spence of her baby's premature birth. Docs. 11-3 ¶ 15; 22 ¶ 61; 22 ¶¶ 60, 61, 62. Plaintiff was informed by Spence that her FMLA leave was set to expire on December 9, 2014, and that she was expected to return to work on that date. Docs. 11-3 ¶ 15; 22 ¶ 61. During this conversation, however, Spence told Plaintiff she understood that Plaintiff would need time to recover from her caesarean section.[4] Doc. 20-1 ¶¶ 14, 61. Plaintiff attempted to call Spence several times prior to the termination of Plaintiff's employment, but Spence, despite telling Plaintiff that she would call her back, never did.[5] Doc. 20-1 ¶¶ 14, 61, 63. Plaintiff admits she was told by her supervisory, Becky Jones, that she would need a release from her doctor before returning for work. *See* Docs. 20-1 ¶ 17; 11-3 ¶¶ 16, 17, 18; 17 at 57-58.

Plaintiff did not return to work on December 9, 2014, the day her leave expired. Docs. 20-1 ¶ 17; 11-3 ¶¶ 16, 17, 18; 17 at 57-58. Nor did she ever explicitly request that she be granted additional leave. Doc. 17 at 83-84. Defendant did not offer Plaintiff an extension of unpaid leave prior to terminating her employment. Doc. 20-1 ¶ 66. On December 12, 2014, Plaintiff followed up with her doctor and was released to return to work. Doc. 20-1 ¶ 62. However, Plaintiff did not inform Defendant that she was released to return to work or provide the required work/fitness for duty certificate. Docs. 20-1 ¶ 17; 11-3 ¶¶ 16, 17, 18; 17 at 57-58.

Effective December 18, 2014, Plaintiff's employment was terminated for failure to report to work following the expiration of Plaintiff's FMLA leave, Doc. 11-3 ¶¶ 19, 36, and for failure to obtain a release from her doctor. Doc. 11-2 ¶ 30. Plaintiff asserts that she was informed on December 17, 2014, that her notice of termination was in the mail. Doc. 20-1 ¶¶ 14, 19. Plaintiff was told by Spence that she was welcome to apply to positions with

---

[4] Defendant does not admit or deny this in its response to Plaintiff's Statement of Supplemental Facts. Defendant states, however, that it did not know that Plaintiff would only need a short leave of absence and further denies that Defendant had the option of offering Plaintiff short term leave in addition to her FMLA leave. Doc. 22 ¶ 66.

[5] Defendant does not admit or deny that Plaintiff attempted to call Spence multiple times. Doc. 22 ¶ 63. Defendant denies that Spence ever told Plaintiff that she would call Plaintiff back. Doc. 22 ¶ 61. Whether Spence told Plaintiff that she would return the call is not material to this analysis.

5

Defendant once she was released to return to work. Docs. 17 at 74; 15 at 16; 11-3 ¶ 20. Defendant admits that this conversation took place but asserts that it took place during the December 8, 2014 conversation and that the December 8, 2014 conversation was the last conversation between Spence and Plaintiff prior to the termination of Plaintiff's employment. Doc. 2 ¶ 64. Defendant had multiple job postings available after Plaintiff was terminated. *See* Doc. 11-3 ¶¶ 18-29, 31-42. Plaintiff never looked to see what jobs were available with Defendant after she was terminated. Doc. 11-3 ¶ 21.

## DISCUSSION

### I. Race Discrimination against Plaintiff

Plaintiff alleges she was discriminated against because of her race. "In the employment context, the elements of a race-discrimination claim under § 1981 are the same as a Title VII disparate-treatment claim." *Robinson v. Colquitt EMC*, 651 F. App'x 891, 893 (11th Cir. 2016). Thus, this Court will analyze Plaintiff's § 1981 claim under the Title VII framework. A plaintiff may show discriminatory treatment by her employer by presenting direct evidence of intent to discriminate. *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008). Where, as here, a plaintiff presents no direct evidence of discrimination, she may present circumstantial evidence of discrimination, which courts analyze under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carroll*, 529 F.3d at 976. "To make out a *prima facie* case of racial discrimination, a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Carroll*, 529 F.3d at 970. "In order to use comparators to support an inference of race discrimination in the context of workplace discipline, a plaintiff must show that the comparators' alleged misconduct is nearly identical to the plaintiff's in order to prevent courts from second-guessing employers reasonable decisions and confusing apples with oranges." *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1340 (11th Cir. 2015) (punctuation omitted), *cert. denied sub nom.*, *Flowers v. Troup Cty., Georgia, Sch. Dist.*, 136 S. Ct. 2510 (2016).

Plaintiff can establish the first three elements but fails to prove the fourth—that a similarly situated employee was treated differently—as she has failed to identify a valid comparator. Plaintiff's only comparator, Mandy Dean, is not similarly situated. The record shows that Mandy Dean, a white female, did use FMLA leave for the birth of a child but that her FMLA leave period did not exceed twelve (12) weeks and that Dean returned to work at the end of her leave. Doc. 11-3 ¶ 51; 22 ¶ 67; 17 at 84-88. Plaintiff has not alleged that Dean engaged in Plaintiff's alleged conduct—failing to report to work after the end of FMLA leave or failing to obtain a release from a doctor. Thus, Dean was not similarly situated, and Plaintiff has not made out a *prima facie* case of racial discrimination under Title VII or § 1981.

Even if Plaintiff had established a *prima facie* case, her claim would fail as Defendant was able to 'articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *Id.* A defendant's "intermediate burden is exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (punctuation omitted). Defendant must merely proffer, not prove, non-discriminatory reasons for its actions. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). Here, Defendant has met its burden by proffering non-race-based discriminatory reasons for terminating Plaintiff's employment—Plaintiff's failure to report to work at the end of her FMLA leave or obtain a release from her doctor.

Once Defendant articulates a legitimate, nondiscriminatory reason for Plaintiff's termination, "the burden of production shifts to [Plaintiff] to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007). The Eleventh Circuit has explained that the plaintiff "must meet the reason proffered head on and rebut it." *Crawford*, 482 F.3d at 1308; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (internal citation omitted). "The focused inquiry in the last step requires the plaintiff to demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). "Put another way, once the employer succeeds in carrying its intermediate burden of production, the ultimate issue in

7

the case becomes whether the plaintiff has proven that the employer intentionally discriminated against [her] because of [her] race." *Holifield*, 115 F.3d at 1565.

Plaintiff has presented no evidence that Defendant's proffered reason was a pretext for race discrimination. Plaintiff presents no evidence at all that race was the motivating factor behind the termination of her employment. Thus, Plaintiff has not carried her ultimate burden to prove that she was discriminated against by her employer because of her race.[6] Defendant's Motion for summary judgment on Plaintiff's Title VII and § 1981 racial discrimination claims is **GRANTED**.

## II. Sex and Pregnancy Discrimination against Plaintiff

Plaintiff alleges she was discriminated against because of her sex and because she was pregnant. "It is unlawful under Title VII for employers to discriminate against any individual on account of the individual's sex." *Peppers v. Cobb Cty.*, 835 F.3d 1289, 1295 (11th Cir. 2016); 42 U.S.C. § 2000e-2(a)(1). The analysis for a sex discrimination claim is the same as for a racial discrimination under Title VII. *See Evans v. Books-A-Million*, 762 F.3d 1288, 1297 (11th Cir. 2014). Further, "[t]he PDA amended Title VII by providing that the prohibition against sex discrimination includes discrimination based on pregnancy, childbirth, or related medical conditions." *Penaloza v. Target Corp.*, 549 F. App'x 844, 846 (11th Cir. 2013). "The analysis for a pregnancy discrimination claim is the same as for a Title VII sex discrimination claim." *Id.* Thus, the Court will analyze Plaintiff's sex and pregnancy discrimination claims together.

Here, Plaintiff cannot meet her *prima facie* case for either sex or pregnancy discrimination. While Plaintiff is clearly a member of a protected class as a woman and based on her pregnancy, was arguably qualified for the job as she was employed for three years and promoted, and suffered an adverse employment action as evidenced by the termination of her employment, Plaintiff has not established that Defendant treated men or non-pregnant women more favorably. As discussed above, Plaintiff has identified only one comparator,

---

[6] Plaintiff also had the option of bypassing the *McDonnell Douglas* framework if she presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination" by her employer. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[P]laintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."). Here however, Plaintiff has not put forth specific instances that create a mosaic, much less a convincing mosaic, from which a jury could infer racial discrimination on the part of Defendant.

Mandy Dean—a female former employee with Defendant who used FMLA leave for the birth of her child. Given that Plaintiff's comparator is or was in the same protective classes as Plaintiff—pregnant and female—Plaintiff has failed to show that "her employer treated similarly situated employees *outside* her class more favorably." *Carroll*, 529 F.3d at 970 (emphasis added). Plaintiff also failed to put forth specific instances—a mosaic—from which a jury could infer gender or pregnancy discrimination on the part of Defendant. *See Hubbard v. Meritage Homes of Florida, Inc.*, 520 F. App'x 859, 863 (11th Cir. 2013) (punctuation omitted) ("[I]f the plaintiff cannot show a non-pregnant comparator who was treated differently, she alternatively can survive summary judgment by presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."). Further, Plaintiff's case fails under the mosaic theory because she presents no evidence that Defendant violated its own policies in terminating her employment. *See id.* (same) ("[A] plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her."). Thus, Defendant's Motion for summary judgment on Plaintiff's sex and pregnancy discrimination claims is **GRANTED**.

### III. Disability Discrimination against Plaintiff

Plaintiff alleges that she was treated differently than similarly situated employees, that Defendant failed to accommodate her disability, and that Defendant failed to engage in the interactive process with Plaintiff.

### A. Disparate Treatment

"[T]he Title VII burden-shifting framework applies to ADA claims" of disparate treatment. *Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012). Like Title VII cases, "[t]o establish unlawful disparate treatment, a plaintiff generally must demonstrate that h[er] employer treated similarly situated employees outside of h[er] protected class more favorably than [s]he was treated." *Id.* Again, Plaintiff's failure to identify a comparator outside her protected class is fatal to her claim. Her only comparator, Mandy Dean, was also pregnant and utilized FMLA leave. Further, unlike Plaintiff, Dean reported to work at the end of her FMLA leave. Thus, Plaintiff cannot make out a *prima facie* case for disparate

treatment under the ADA.[7] Defendant's Motion for summary judgment on this claim is **GRANTED**.

## B. Failure to accommodate

"The ADA prohibits discrimination by an employer 'against a qualified individual on the basis of disability' in any of the 'terms, conditions, and privileges of employment.'" *United States Equal Employment Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016) (quoting 42 U.S.C. § 12112(a)). "The burden shifting analysis of Title VII employment discrimination claims is partially applicable to ADA claims" of failure to accommodate. *Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015). To establish a *prima facie* case under the ADA for failure to accommodate, a plaintiff must show that she suffered an adverse action and "that, at the time of the adverse employment action, she had a disability, she was a qualified individual, and she was subjected to unlawful discrimination because of her disability." *St. Joseph's Hosp., Inc.*, 842 F.3d at 1343. "[O]nce the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to demonstrate undue hardship. Unlike in Title VII cases, however, the plaintiff has no subsequent burden to demonstrate pretext." *Abram*, 598 F. App'x at 676. That is, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis in original). Here, the parties agree for purposes of the Motion that Plaintiff was disabled and that Defendant did not accommodate Plaintiff. Thus, whether Defendant discriminated against Plaintiff in failing to accommodate her hinges on whether Plaintiff is a qualified individual.

"A qualified individual with a disability is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Bagwell v. Morgan Cty. Comm'n*, 676 F. App'x 863, 865 (11th Cir. 2017) (citing 42 U.S.C. § 12111(8)). "An essential function is a fundamental job

---

[7] Plaintiff also failed to put forth specific instances—a mosaic—from which a jury could infer discrimination on the part of Defendant because of Plaintiff's disability. *See Ward v. United Parcel Serv.*, 580 F. App'x 735, 740 (11th Cir. 2014) (finding plaintiff failed to show wrongful termination in violation of ADA via mosaic theory).

10

duty of a position," and courts determine whether a function is essential on a "case-by-case basis." *Id.* "A function may be essential because the position exists to perform that function, a limited number of employees can perform the function, or the function is highly specialized and requires expertise." *Id.* Courts give "substantial weight to an employer's judgment as to which functions are essential." *Id.* at 866.

Here, the record shows that Plaintiff was on FMLA leave and, arguably, could not perform her job functions while on leave. Defendant argues that Plaintiff is not a qualified individual—asserting that: "Plaintiff could not perform any of the essential functions of her job when, after September 16, 2014, Plaintiff could not work at all." Doc. 11-1 at 8 (emphasis omitted). The ADA, however, "covers people who can perform the essential functions of their jobs *presently or in the immediate future*." *Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1001 (11th Cir. 2013) (emphasis added). The essential job function that Defendant asserts Plaintiff was unable to perform was attendance. However, as Plaintiff was absent due to complications of childbirth that were resolved shortly after her cesarean, the question becomes whether a reasonable accommodation would enable Plaintiff to perform the essential function of her position "presently or in the immediate future." *Id.*

"The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows her to perform the job's essential functions." *Bagwell*, 676 F. App'x at 865 (citation and punctuation omitted). "An employer must provide such a reasonable accommodation for an employee with a known disability, unless it would result in undue hardship." *Id.* at 866. An employer's duty to provide a reasonable accommodation, engage in the interactive process, or show undue hardship is not triggered unless the plaintiff makes a "specific demand for an accommodation." *Id.* at 866-67; *see Roddy*, 536 F. App'x at 1000. While there is no caselaw directly on point, the Court of Appeals has found, in an analogous situation, that making a responsible party aware of the need for an accommodation is sufficient to meet the specific demand requirement. The Eleventh Circuit held, in the Fair Housing Act context, that a plaintiff has made a request for accommodation when circumstances are "'sufficient to cause a reasonable [housing provider] to make appropriate inquiries about the possible need for an accommodation.'"

*Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016) (alteration in original) (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) ("The [ADA] does not require any formal mechanism or "magic words," to notify an employer . . . that an employee needs an accommodation.")). In *Hunt*, a plaintiff-tenant, whose adult son had down syndrome and was accused of threatening community staff, told the community manager that her son's disability made it difficult to understand him and that, in order to avoid conflicts due to her son's disability, if she were allowed to stay in the community she would find a facility where her son could stay during the day while Plaintiff worked. 814 F.3d at 1226. The Court held that by noting her son's disability and the attendant difficulties, the plaintiff had made a request for an accommodation. *Id.*

Here, Plaintiff informed Spence on December 8, 2014, that she delivered her baby via emergency caesarean section three days earlier. Spence noted that Plaintiff would need time to recover from the surgery but did not inquire whether or not Plaintiff needed an accommodation and did not offer one. Defendant argues that Plaintiff could not perform her position's essential function because she was absent from work. Given that Plaintiff was cleared by her doctor to work on December 12, 2014, a short leave of absence would have allowed Plaintiff to return to work—thereby performing the essential job function of her position "in the immediate future." *Roddy*, 536 F. App'x at 1001. Defendant has not put forth evidence that such a short leave of absence would create an undue hardship. Thus, Defendant has failed to show that it is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim. Accordingly, Defendant's Motion for summary judgment on this claim is **DENIED**.

IV. **Retaliation for Plaintiff's use of FMLA leave**

Plaintiff claims that Defendant interfered with her rights under the FMLA and retaliated against her for utilizing such rights.

### A. Interference

"The [FMLA] confers [upon an employee] the right to take twelve weeks of job leave . . . and the right to be reinstated to her original job (or an equivalent) after FMLA leave." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) (citation and

punctuation omitted). "To protect these rights, the FMLA creates a private right of action. If an employer interferes with an employee's FMLA rights, she may sue for equitable relief or money damages." *Id.* "An [FMLA] interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." *Id.* Where an employer has given an employee 12 weeks of leave under the FMLA, an interference claim will not lie where the employee's employment is terminated for failure to report to work at the expiration of her FMLA leave. *See Johnson v. Vintage Pharm., Inc.*, 185 F. App'x 798, 800 (11th Cir. 2006). An employer may require an employee's paid or sick leave to run concurrently with the employee's exercise of FMLA leave. *Dixon v. Pub. Health Tr. of Dade Cty.*, 567 F. App'x 822, 826 (11th Cir. 2014). "The reasonable-accommodation requirement under the ADA is distinct from a FMLA interference claim." *Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x 860, 865 (11th Cir. 2012). Further, "an employer may lawfully require a fitness-for-duty certification without interfering with the exercise of an employee's FMLA rights." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1268 (11th Cir. 2017).

Here, Plaintiff has presented no evidence that she was denied an FMLA benefit. Indeed, Plaintiff received 12 weeks of FMLA leave. Plaintiff did not return to work after her FMLA leave expired. As such, at the time Plaintiff's employment was terminated, Defendant had satisfied its FMLA obligation to Plaintiff. Further, Plaintiff never submitted a work/fitness for duty certificate as required by Defendant and allowed by the FMLA. As such, Plaintiff has not shown that Defendant interfered with Plaintiff's rights under the FMLA. Thus, Defendant's Motion for summary judgment on Plaintiff's FMLA interference claim is **GRANTED**.

### B. Retaliation

"To prove a retaliation claim under the FMLA, the plaintiff must show that her employer intentionally discriminated against her for having exercised an FMLA right. In order words, the plaintiff must show that her employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Caldwell v. Clayton Cty. Sch. Dist.*, 604 F. App'x 855, 860 (11th Cir. 2015) (citation and punctuation omitted). Where, as here, the

plaintiff presents no direct evidence of retaliatory intent, courts analyze the circumstantial evidence presented under the burden-shifting framework of *McDonnell Douglas*. *Caldwell*, 604 F. App'x at 860. To make a *prima facie* showing of FMLA retaliation, Plaintiff must show that "(1) she engaged in activity protected by the FMLA, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to the protected activity." *Id.* "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (citation and punctuation omitted). The Eleventh Circuit recently held that "temporal proximity, for the purpose of establishing the causation prong of a *prima facie* case of FMLA retaliation, should be measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Jones*, 854 F.3d at 1272; *see also Evans*, 762 F.3d at 1297 n.6 (11th Cir. 2014) (noting that fact issue could exist where employee reassigned immediately after returning from FMLA leave). Plaintiff has established a *prima facie* case for FMLA retaliation by showing that she requested and took 12 weeks of FMLA leave. Plaintiff's employment was terminated effective 10 days after the expiration of Plaintiff's FMLA leave. *See, e.g.*, *Diamond v. Hospice of Florida Keys, Inc.*, 677 F. App'x 586, 596 (11th Cir. 2017) (finding causation met where plaintiff fired less than two weeks after last day of FMLA leave); *cf. Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016) (holding four month gap between firing and FMLA leave too "tenuous" to establish causation).

"The burden shifts back to [Defendant] if [Plaintiff] can establish a *prima facie* case, requiring [Defendant] to articulate a legitimate, nondiscriminatory reason for [Plaintiff's] termination. [I]f [Defendant] meets this burden, then [Plaintiff] must show that the supposedly legitimate reason was in fact a pretext designed to mask illegal discrimination." *Jones*, 854 F.3d at 1271. Defendant has articulated a legitimate reason for Plaintiff's termination—her failure to return to work and her failure to obtain a release to work from her doctor. Plaintiff, in response, has presented no evidence that Defendant's proffered reason was pretext. Plaintiff presents no evidence that Defendant was motivated by a retaliatory or discriminatory animus when it terminated her employment. Thus, Plaintiff has

not carried her ultimate burden to prove that she was discriminated against by her employer because she took FMLA leave. Accordingly, Defendant's Motion for summary judgment on Plaintiff's FMLA retaliation claim is **GRANTED**.

V. **Defendant's Motion for hearing**

Finally, Defendant has moved for a hearing on its Motion for summary judgment. Doc. 18. Plaintiff opposes Defendant's request for a hearing. Doc. 19. "All motions shall be decided by the court without a hearing unless otherwise ordered by the court on its own motion or in its discretion upon request of counsel." M.D. Ga. L.R. 7.5. There is no need for a hearing in this matter. Accordingly, Defendant's motion for a hearing, Doc. 18, is **DENIED**.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment, Doc. 11, is **GRANTED in part and DENIED in part**. Defendant's motion for a hearing, Doc. 18, is **DENIED**.

**SO ORDERED**, this 16th day of August, 2017.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**